UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-01882-WYD

KENNETH M. ARCHULETA,

    Plaintiff,

v.

LINDA S. McMAHON, Acting Commissioner of Social Security[1],

    Defendant.

_____

**ORDER**
_____

I.    INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383c. Plaintiff's applications filed December 1, 1997 and July 31, 1998 (Transcript ["tr."] at 39-41, 104-11) were denied initially and on reconsideration. (*Id.* at 42-45, 112-20, 123-25.) After a hearing on September 29, 1999, Administrative Law Judge ["ALJ"] E. William Shaffer found at step five that Plaintiff was disabled between April 19, 1997 and December 1, 1998, but not thereafter. (*Id.* at 203-15.)

On March 4, 2003, the Social Security Administration's Appeals Council vacated the ALJ's decision in its entirety. (Tr. at 221-23.) The Appeals Council consolidated

---

[1] Linda S. McMahon, Acting Commissioner of Social Security, has been substituted for former Commissioner Jo Anne B. Barnhart pursuant to FED. R CIV. P. 25(d)(1).

the case with pending applications and remanded the case for further proceedings. (*Id.*)

The Appeals Council remanded the case to the ALJ with instructions. (Tr. at 222-23.) Among other things, the ALJ was to determine whether Plaintiff worked after the alleged onset date, obtain additional evidence and clarification from Drs. Lanny Campbell and Velma Campbell, obtain a consultative neuropsychological evaluation, obtain evidence from a medical expert and give further consideration to whether Plaintiff's impairments meet or equal a listing, further evaluate Plaintiff's subjective complaints and provide rationale pertaining to evaluation of symptoms, further evaluate Plaintiff's RFC and provide rationale with specific references to evidence in support of the limitations, consider source opinions and explain the weight given to them, further evaluate past work history and obtain evidence from a vocational expert ["VE"] if warranted by the expanded record. (*Id.*) Prior to the remand hearing, Plaintiff was to submit to a consultative examination with Velma Campbell, M.D. (*Id.* 406-08.)

The ALJ held a second hearing on August 30, 2004. (Tr. at 532-62.) He issued a final decision on October 19, 2004, finding that Plaintiff was not disabled. (*Id.* at 21-33.) This included a reversal of the earlier finding that Plaintiff was disabled between April 19, 1997 and December 1, 1998. *Id.* This decision is discussed in more detail in the following section. The Appeals Council denied Plaintiff's request for review on July 27, 2005 (*id.* at 7-12), making the ALJ's decision final for purposes of judicial review under Section 205 of the Act, 42 U.S.C. § 405(g).

II.     THE ALJ'S DECISION

The ALJ's final decision found that Plaintiff retains the RFC not only to perform his past relevant work, but also retains the RFC necessary to perform other work which exists in significant numbers in the national economy. (Tr. 22.)  Accordingly, he found that Plaintiff was not disabled. (*Id.*)

In the decision, the ALJ found that Plaintiff was then 42 years old, with the equivalent of a high school education. (Tr. at 22.)  He has worked in the past as a concrete construction laborer, roofer, warehouse worker, electronics assembler, and sales clerk. (*Id.*)  The ALJ noted that Plaintiff alleges his medical condition made him stop working on April 19, 1997, and found at step one that Plaintiff has not engaged in substantial gainful activity ["SGA"] since that time. (*Id.* at 22-23, 32.)

At step two, the ALJ found that Plaintiff had the following severe impairments: "complex regional pain syndrome in his left leg, status post ankle fracture, and degenerative joint disease in the left ankle and knee, status post arthroscopy in the knee, impairments which cause significant vocationally relevant limitations." (Tr. at 23, 32.)  The ALJ found that other impairments, including dermatitis, headaches, carpal tunnel syndrome, reflex sympathetic dystrophy, obesity and mental impairments, were not severe. (*Id.* at 23-24.)  After discussing the medical evidence, the ALJ found at step three that Plaintiff's impairments did not meet or equal a medical listing. (*Id.* at 27, 32.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. (Tr. at 27-30.)  Plaintiff was found to retain the RFC "to perform a significant range of light

work." (*Id.* at 30.)  More specifically, the ALJ found:

> He is able to lift, carry, push and/or pull up to 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk up to 3 hours in an 8-hour workday and can sit for at least 6 hours in an 8-hour workday.  His ability to use foot controls on the left is limited to an occasional basis.  He is unable to climb ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs, stoop, crouch, and crawl.  He is to avoid unprotected heights, temperature extremes, and vibrations.

(*Id.* at 30.)  The ALJ stated that this RFC "is fairly consistent with the April 15, 2004 opinion of Dr. Velma Campbell" and "is also fairly consistent with the assessment of the State agency medical consultant who reviewed the record in February 2002." (*Id.*)

In making the RFC assessment, the ALJ considered Plaintiff's credibility.  (Tr. at 27-29.)  He considered Plaintiff's subjective complaints and noted that "the medical evidence of record fails to reveal objective abnormalities which can reasonably be expected to cause the degree of symptomatology and functional limitation which the claimant alleges." (*Id.* at 28.)  He further found that "inconsistencies in the record do not support a finding of credibility." (*Id.*)  The ALJ found that "[d]ue to the inconsistencies in the record and the lack of objective support for the claimant's contentions", . . . the claimant's complaints of pain and functional limitation are generally not credible." (*Id.* at 29.)

Proceeding to step four, the ALJ analyzed Plaintiff's ability to perform his past relevant work.  (Tr. at 30-31.)  The ALJ considered the testimony of the vocational expert ["VE"] who testified at the hearing.  (*Id.* at 31.)  The VE testified that a person with the same RFC as Plaintiff would be capable of performing his past relevant work as a sales clerk (a light, semi-skilled job) and an electronics assembler (a light, skilled

job) "as customarily performed by approximately 50 percent of the numbers existent in the national economy." (*Id.*)  The ALJ found that as Plaintiff "performed this work within the past 15 years at a level consistent with a finding of substantial gainful activity" and "consistent with the credible testimony of the VE", Plaintiff retains the RFC "to perform his past relevant work as a sales clerk and electronics assembler." (*Id.*)

The ALJ also found that even if Plaintiff were unable to perform his past relevant work, he retains the RFC to perform other work in significant numbers.  (Tr. at 31-32.) Relying on the testimony of the VE, the ALJ found that a person with Plaintiff's RFC would be able to work at other light, unskilled work as a gate guard, a social services aide, and a security guard as described in the Dictionary of Occupational Titles.  (*Id.* at 31.)  These jobs were found to exist in significant numbers in the economy.  (*Id.*)

III.  ANALYSIS

    A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  "Evidence is not substantial if it is overwhelmed by other

evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

    B.    <u>Plaintiff's Arguments</u>

        1.    <u>Whether the ALJ Erred in Failing to Use a Medical Expert as Required by the Remand Order</u>

Plaintiff argues that the Appeals Council ordered the ALJ to utilize a medical expert on remand to assess whether he met or equaled a listing, "applying the final revised regulatory standards for musculoskeletal and related impairments. . . ." (Tr. at 222.) Plaintiff further argues that the ALJ is required to take action ordered by the Appeals Council. The ALJ failed to utilize a medical expert in the remand hearing and failed to obtain an opinion from Dr. Campbell on this issue. The result, according to Plaintiff, is that the ALJ failed to adequately develop the record and failed to comply the remand order. Accordingly, Plaintiff argues that the decision must be reversed and remanded for development of the record in the form of a medical expert opinion.

In response, the Government argues that the issue lacks merit. Upon remand, the ALJ utilized the consultative reports of examination by Dr. Valette and Dr. Campbell—medical experts who examined Plaintiff after remand. (Tr. 27-30.) The ALJ also considered additional medical evidence received after remand, including the

treatment notes of Drs. Bissell and Dr. Rajadas. (Tr. 27-30). The Commissioner asserts that the ALJ's use of consultative medical experts who examined Plaintiff and his consideration of updated records from treating sources fully complied with the Appeal Council's remand order (Tr. 221-23). Thus, it is argued that the ALJ was not required to utilize a medical expert.

I find that the ALJ erred by failing to utilize a medical expert to assess whether Plaintiff met or equaled a listing. The Appeals Council specifically directed that the ALJ utilize a medical expert to assess whether Plaintiff met or equaled a listing, "applying the final revised regulatory standards for musculoskeletal and related impairments. . . ." (Tr. at 222.) I disagree with the Commissioner's argument that the ALJ's use of consultative medical experts who examined Plaintiff and his consideration of updated records from treating sources complied with the Appeal Council's remand order.

First, as Plaintiff points out in his reply brief, there is a distinction between a "medical expert" that may be consulted by the ALJ and a consultative examiner such as Dr. Velma Campbell or Brett Vallette, Ph.D. *See, e.g.*, 20 C.F.R. § 404.1527. That regulation expressly permits an ALJ to employ a medical expert to review the evidence and render an opinion as to the nature and severity of a claimant's impairments and whether those impairments meet or equal any listings. *Id.*, § 404.1527(f)(2)(iii). The assessment of whether an impairment meets or equals a listing was thus within the province of a medical expert as ordered by the Appeals Council. Opinions of consultative examiners are not the same as an assessment by a medical expert.

Moreover, the Appeals Council was aware that Plaintiff had already been examined by Velma Campbell, M.D. (See Tr. 222.) The Council ordered the ALJ to obtain clarification from Dr. Campbell in a prior section of the remand order. This strongly suggests that the Appeals Council was not referring to Dr. Campbell when it required the ALJ to obtain a "medical expert". Finally, even if I were to assume that consultative or other examiners in this case are "medical experts" within the meaning of the remand order, the examiners in this case did not specifically assess whether Plaintiff met or equaled a listing, "applying the final revised regulatory standards for musculoskeletal and related impairments. . ." as required by the remand order.[2] Accordingly, I find that the decision of the Commissioner must be reversed and remanded for development of the record in the form of a medical expert opinion.

2. <u>Whether the ALJ Failed to Properly Assess Whether Plaintiff's Impairments Met or Equaled a Listing</u>

Plaintiff asserts that the ALJ is required to determine whether claimant meets or equals a listing at step three of the sequential evaluation process. Further, the order of remand by the Appeals Council required the ALJ to assess whether Plaintiff met the listing for musculoskeletal impairments. Plaintiff argues that the ALJ made a bare conclusion that he did not meet or equal a listing, and that the ALJ erred by failing to explain the basis for that conclusion (including the evidence and his reasons for his finding). Further, the ALJ did not discuss the medical evidence in the context of the specific listing or show that he considered the elements of the listings. Plaintiff argues

---

[2] Further, Drs. Bissell and Rajadas did not see Plaintiff after the remand order, and thus could not have satisfied the Council's directive to obtain a medical expert.

that such a bare conclusion is beyond meaningful judicial review. Accordingly, it is argued that the decision should be reversed and remanded for an assessment of disability at step three.

Turning to my analysis, an ALJ is required "to discuss the evidence and explain why he found that [a claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1997). The Commissioner asserts that the ALJ fulfilled his duty at step three. First, it is argued that the ALJ discussed the medical evidence, considered the listings relating to musculoskeletal, neurological, and mental impairments, and found Plaintiff's condition did not meet or equal a listed impairment. Further, it is argued the ALJ's finding on this issue is consistent with the opinions of a reviewing psychiatrist and a physician who determined that Plaintiff's condition did not meet or equal a listed impairment. The Commissioner asserts that the determination of whether a particular medical condition meets a listing is a medical judgment, and the ALJ is entitled to rely on the opinions of reviewing physicians on this issue.

I agree with Plaintiff that the ALJ failed to adequately assess Plaintiff's impairments at step three. The ALJ never stated any reason for his bare conclusion that the listings were not met. Although he discussed the medical evidence prior to his finding at step three, he did not state what evidence he relied upon for his finding that the listings were not met. Further, he did not give any reasons, supported by evidence, as to why the listings were not found to be met.

In support of the ALJ's conclusion that Plaintiff does not meet a listing, the Commissioner cites the February 5, 2002 report of Dr. Bryan, a State agency physician

(tr. 398-405) and the March 12, 2002 report of Dr. Garnand, a State agency psychiatrist. (Tr. 409-420.) However, the ALJ did not state that he relied on these reports in support of his conclusion that the listings were not met. The Commissioner may not provide a post hoc attempt to rationalize the ALJ's decision. See *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). Further, the State agency opinions cited by the Commissioner are dated in 2002. These existed on the date of the remand order in 2003. The Appeals Council order required the Administrative Law Judge to "obtain evidence from a medical expert" as to the listing. (Tr. 222.) The existence of evidence which was in the record at the time of the Appeals Council review does not fulfill the requirement to "obtain evidence from a medical expert."

The Commissioner argues, however, that even if the Court were to accept Plaintiff's arguments, the error would be harmless, at most, in light of the ALJ's consideration of the record, his thorough discussion of the medical evidence, and his findings at steps four and five. The Tenth Circuit has stated that *Clifton* "sought only to ensure adequate development of the administrative record and explanation of findings to permit meaningful review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). At step three, "harmless error analysis . . . 'may be appropriate to supply a missing dispositive finding ⋯ where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Id.* at 733-34 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

I find that the ALJ's lack of findings at step three was not harmless error. First, the harmless error analysis is not applicable given the Appeals Council orders to the ALJ to obtain evidence from a medical expert and give further consideration to whether claimant's impairments meet a listing, which were not complied with. Second, there are findings of the ALJ that, combined with other evidence such as Dr. Velma Campbell's 2004 report, could warrant a finding of ineffective ambulation sufficient to meet or equal the musculoskeletal listing. The ALJ did not discuss this at step three, and there are no findings made at steps four and five that confirm the step three determination. I cannot say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. Accordingly, I find that the decision of the Commissioner must also be reversed and remanded on this issue for development of the record at step three.

### 3. Whether the ALJ Failed to Properly Evaluate the Opinions of the Physicians in Formulating the RFC

Plaintiff asserts that in formulating a RFC, the ALJ has an obligation to evaluate all medical opinions in the record and must explain the weight given to such opinions. Plaintiff argues that these obligations are enhanced in our case given the specific directives of Appeals Council in the remand order. Plaintiff states that while the ALJ found his RFC was "fairly consistent" with the medical opinions of Dr. Velma Campbell and the State Agency physician, the RFC finding was not consistent with Dr. Campbell's opinion. I agree with Plaintiff for the reasons stated below.

First, the ALJ adopted Dr. Campbell's least restrictive restrictions while improperly ignoring the lower end of her range of restrictions.  Specifically, Dr. Campbell stated that Plaintiff could lift 15 to 20 pounds occasionally and stand for two to three hours per day.  (Tr. 382.)  The ALJ did not discuss this range of restrictions; instead, he adopted the higher end of the range – twenty pounds lifting and three hours standing.  I find that the ALJ erred by not giving reasons why he ignored the lower end of the range, as his approach rendered meaningless the lower end of Dr. Campbell's restriction range.  The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004); *see also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir.2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring ⋯ evidence"); *Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. 1999) ("[w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review").

Further, the ALJ ignored other restrictions imposed by Dr. Campbell in her 2004 opinion.  Indeed, Defendant acknowledges that the RFC finding is not consistent with Dr. Campbell's restriction of the activities of climbing, bending, stooping, kneeling, balancing and squatting.  (Def.'s Resp. Br. at 25.)  The Commissioner argues that this is harmless error because the jobs found by the ALJ "do not require more than infrequent" assumption of such postures.  (*Id.*)  However, there is no evidence in the record to support that statement.  As Plaintiff points out in the reply brief, the vocational expert ["VE"] did not testify to how much postural activity was required of such jobs (tr.

556-561), and there is no evidence in the record to support the argument.  Post-hoc rationalizations are not proper to explain the Commissioner's treatment of evidence when that treatment is not apparent from the decision itself.  *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).[3]

I also find error with the ALJ's decision to reject the 1998 and 2002 opinions of Drs. Velma Campbell and Lanny Campbell.  First, I note that this is inconsistent with the prior decision of the ALJ, wherein he found these opinions were "credible" and afforded "substantial weight."  (Tr. at 209.)  While I acknowledge that the ALJ was not bound by his previous findings after that decision was vacated, some explanation is warranted when the same evidence results in opposite findings.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004); *see also Lively v. Sec'y. of Health and Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987).  In short, the ALJ should have given an explanation as to why he reached a contrary conclusion in the second decision so that I could determine if this was supported by substantial evidence.

I now turn to the ALJ's reasons for rejecting Dr. Velma Campbell's earlier opinions.  The ALJ rejected them for two reasons:  inconsistency with the record as a whole and her exam showed minimal objective abnormality.  Plaintiff argues that the first reason is not legally sufficient because it is a bare conclusion.  I agree.  The ALJ did not detail any evidence in the record that was inconsistent with Dr. Velma Campell's opinions.  The Commissioner's response brief also does not discuss this.  I find this

---

[3] Further, I note that when the ability to stoop is less than occasional, vocational testimony may be needed in order to determine how much the job base is eroded.  SSR 96-9p.

reason particularly suspect since the ALJ previously afforded the decision great weight. Accordingly, I find that this reason was not supported by substantial evidence. *See Fleetwood v. Barnhart*, No. 05-6373, 2007 WL 18922, at *4 (10th Cir. 2007) (conclusory findings that are unsupported with reasoning are not appropriate).

I also find that the second reason given by the ALJ is not supported by substantial evidence. While he believed Plaintiff's impairments were sufficiently severe to limit lifting to 20 pounds occasionally, standing/walking to three hours per day, stooping, crouching and crawling to occasional (tr. 30), he rejected Dr. Campbell's earlier limitation of standing and/or walking to one to two hours per day. (Tr. 408.) Thus, the ALJ accepted that there were limitations. The issue is one of degree— whether the ALJ's findings that Plaintiff can stand/walk for three hours per day is correct in light of Dr. Campbell's stricter 2002 limitation. The ALJ fails to explain how the fact that an earlier exam showed minimal objective abnormality addresses or is relevant in any way to this issue. Further, I do not see how the degree of objective abnormality resolves this in the absence of a physician's opinion. The ALJ's finding appears to be an improper substitution of the ALJ's opinion over that of an examining physician. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

As to physician Dr. Lanny Campbell, the ALJ rejected Dr. Campbell's opinion for two reasons: lack of proof that he is a treating physician and his 1998 report erroneously noted that Dr. Campbell believed Plaintiff had RSD. I agree with Plaintiff that the first reason–lack of a treatment relationship–is not a reason to reject a medical opinion. It must still be weighed as an examining physician's opinion. *Doyal v.*

*Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (as to sources that are not treating physicians, the ALJ is still required to consider their opinions and to provide specific, legitimate reasons for rejecting them). As to the second reason, while Dr. Campbell may have erroneously found that Defendant had RSD, this is not sufficient to warrant a total disregard of his RFC opinion. Neither Velma Campbell nor Lanny Campbell stated that the restrictions only apply if the Plaintiff actually has RSD. Further, the ALJ failed to discuss the impact of his finding that Plaintiff has a severe impairment of complex regional pain syndrome ("CRPS") in his left leg (Tr. 32), which is comparable to or synonymous with RSD. *See* SSR 03-2p

Finally, I find that the ALJ failed to properly state what weight he assigned to the medical evidence in the record, even though he is required by law to do so. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082-83 (10th Cir. 2004). Further, he was affirmatively directed to do so by the Appeals Council. (Tr. at 222.) Stating that a RFC assessment is "fairly consistent" with opinions of consultative examiner Dr. Velma Campbell and a State Agency physician does not satisfy this requirement. Further, the opinions of Dr. Campbell and the State Agency physician differ in important respects. It is impossible to determine how much weight the ALJ gave to each opinion. If he gave the nonexamining State Agency physician's opinion greater weight, he should have explained why that opinion carried more weight than that of the examining physician.

Based upon these errors, I find that the decision of the Commissioner must be reversed and remanded for a proper assessment of Plaintiff's RFC and a proper evaluation of the opinions of the medical sources.

4. <u>Whether the ALJ Failed to Properly Assess Plaintiff's Credibility</u>

Plaintiff asserts that the ALJ found his testimony to be not credible for two reasons: inconsistency with other evidence and lack of objective corroboration. (Tr. 29.) However, as to the second reason—objective corroboration—the ALJ found Plaintiff to have a severe impairment of CRPS. The Commissioner has acknowledged in SSR 03-2p that CRPS is an impairment which produces persistent intense pain and that the symptoms are frequently transient. Given the finding that Plaintiff has CRPS, I agree with Plaintiff that the ALJ's reasons for rejecting Plaintiff's testimony must fail in the absence of a detailed explanation.

I further note that if the ALJ finds that a claimant's pain, by itself, is not disabling, "that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [ALJ] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'" *Id.* (emphasis in original) (quotations omitted). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do . . . work." *Id.* A remand is also proper on this issue.

IV. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated February 27, 2007

                          BY THE COURT:

                          s/ Wiley Y. Daniel
                          Wiley Y. Daniel
                          U. S. District Judge